UNITED STATES DISTRICT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

                                         Case No: 06-20351
                                         Honorable Denise Page Hood

v.

D-3    TANISHA SUMMERS,

    Defendant.
_____/

**ORDER DENYING DEFENDANT SUMMERS'[1] NOTICE OF ABATEMENT, NOTICES OF DEFAULT AND MOTION TO DISMISS AND ORDER SETTING TRIAL DATE**

**I.    INTRODUCTION**

This matter is before the Court on Defendant Tanisha Summers-El's Notice of Abatement (Motion), filed on February 20, 2007.[2] The Government filed a Response on February 22, 2007.

This is the second time this Court has reviewed Defendant Summers-El's Notice of Abatement. On March 9, 2007, this Court issued an Order denying Defendant Summers-El's Notice of Abatement based on the fact that she filed the instant Motion when she was

---

[1] Defendant Summers asserts her name is Summers-El. The Court will address her as Ms. Summers-El, but that is no indication or legal conclusion that she is not the person Tanisha Summers under indictment.

[2] On April 11, 2007, Defendant Summers-El filed a Motion to Dismiss the Indictment for Illegal Grand Jury Proceedings. As Defendant's Notice of Abatement alleges similar arguments, the Court will address Defendant's Motion to Dismiss the Indictment and treat it as a Supplement to her Notice of Abatement. Defendant Summers-El filed additional documents on April 13, 2007. She did not provide these to the Court until after the Court had given its decision on the record.

represented by counsel. However, she did not file the Notice of Abatement with her attorney's aid, advice or approval. As such, the Court denied Defendant Summers-El's Notice of Abatement as she could not simultaneously assert her right to defend herself and her right to counsel.

At a hearing on March 28, 2007, Defendant Summers-El waived her right to be represented by counsel, asserted her desire to represent herself, and renewed her Notice of Abatement. This Court granted Defendant Summers-El's request to represent herself, but ordered that Mr. Jeffrey Edison remain as stand-by counsel. At the hearing, the Government provided a copy of its Response to Defendant Summers-El's Notice of Abatement to this Court and Defendant. This Response addressed the merits of Defendant Summers-El's Notice of Abatement, whereas the Government's first Response argued only for denying Defendant's Notice of Abatement on procedural grounds.[3]

## II. PROCEDURAL HISTORY

On August 23, 2006, Defendant Summers-El was charged in a Second Superseding Indictment with seven counts of aiding and assisting in the preparation and presentation of false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2), and one count of conspiracy to defraud the United States, in violation of 18 U.S.C. §371.

On October 25, 2006, Defendant Summers-El was appointed counsel, Judith Gracey, who subsequently moved to withdraw as Defendant's attorney, and Mr. Edison was appointed by this Court. As mentioned above, Mr. Edison is currently appearing as Defendant Summers-El's

---

[3] A new stand-by attorney has been appointed in this matter as Mr. Edison's state court trial schedule did not permit him to continue.

stand-by counsel.

### III.     APPLICABLE LAW & ANALYSIS

#### A.     Jurisdiction

Defendant Summers-El argues that this Court lacks jurisdiction over her because she is a sovereign, indigenous Moor of the Creek Nation, and not a United States citizen, that the Internal Revenue Service does not have jurisdiction over the forty-eight mainland United States and that her name on the Indictment is improper.

Title 18 of the United States Code, Section 3231 "grants the district courts of the United States original jurisdiction of all offenses against the laws of the United States." *United States v. Titterington*, 374 F. 3d 453, 459 (6th Cir. 2004). The express language of the statute grants district courts with jurisdiction of all offenses, regardless of the status of the individual alleged to have committed the crime. The Internal Revenue Code defines offenses against the laws of the United States. *See United States v. McMullen*, 755 F. 2d 65, 67 (6th Cir. 1984). Additionally, any argument that the Internal Revenue Service has no authority to prescribe the tax laws in the fifty states is without basis. *See United States v. Mundt*, 29 F. 3d 233, 237 (6th Cir. 1994)(The court held the argument to be "completely without merit and patently frivolous" where defendant argued he was not a resident of any federal zone, but only of the State of Michigan).

Arguments similar to those presently asserted by Defendant Summers-El, that she is not a citizen of the United States[4] and not subject to its laws, have been raised before, and courts that

---

[4] Defendant Summers-El's reliance on the United States Supreme Court's *Dred Scott* decision, *Scott v. Sanford*, 60 U.S. 393 (1857), to support her assertion that she is not a citizen of the United States is without merit. This case was overruled by the ratification of the Fourteenth

have reviewed such arguments have repeatedly rejected them as lacking merit and basis in law. This Court relies on the persuasive opinions of these other courts and denies Defendant Summers-El's argument that she is not subject to the laws of the United States. *See United States v. Hilgeford*, 7 F. 3d 1340, 1342 (7th Cir. 1993); *See also United States v. Gerads*, 999 F. 2d 1255, 1256-57 (8th Cir. 1993); *See also United States v. Silevan*, 985 F. 2d 962, 970 (8th Cir. 1993); *See also United States v. Sloan*, 939 F. 2d 499, 500-01 (7th Cir. 1991). Additionally, this Court notes that the Sixth Circuit has summarily dismissed a habeas corpus petitioner's argument that he was "exempt from punishment for his federal crimes because his rights derive exclusively from the Moorish Science Temple of America." *Kerr v. Hedrick*, 89 Fed. Appx. 962, 963 (6th Cir. 2004)("We have considered [petitioner's] argument on appeal and find it to be without merit." *Id.* at 964.))

Further, all citizens of the United States are subject to American laws.[5] *See Osiris v. Brown*, 2006 WL 208566, *1 (D. N.J. Jan. 24, 2006). In addition, even if Defendant Summers-El is an indigenous Moor of the Creek Nation, she "has a duty to conform to the laws of the United States while residing here." *Id.* Other courts have asserted jurisdiction over Moors. *See*

---

Amendment, which states "all persons born or naturalized in the United States . . . are citizens of the United States and of the state wherein they reside." U.S. CONST. amend XIV.

Additionally, this Court notes that to the extent Defendant Summers-El relies upon the Uniform Commercial Code to support her argument that she is not a citizen of the United States, such an argument is likewise without merit or basis in law. Defendant Summers-El asserts in her Notice of Abatement that she is the holder of the Uniform Commercial code number 2005158838-6. (Def.'s Not. of Abatement, p. 2, ¶ 1) The U.C.C. is inapplicable to criminal matters. *See United States v. Humphrey*, 287 F. 3d 422, 435 (6th Cir. 2002); *United States v. Holloway*, 11 Fed. Appx. 398, 400 (6th Cir. 2001).

[5] While Defendant Summers-El asserts that she is not a United States citizen, this is untrue, as she was born in the United States. (*See* Gov.'s Resp., Ex. 1, State of Michigan, Certificate of Live Birth for Tanisha Lynn Summers)

4

*United States v. James*, 328 F. 3d 953, 954 (7th Cir. 2003)(The Seventh Circuit held that the "[l]aws of the United States apply to all persons within its borders.  Even if [the defendant] were not a citizen of the United States . . , he would be obliged to respect the laws of this nation."). *See, also U.S. v. Roberson*, 2006 WL 3077144, *2 (7th Cir. Oct. 30, 2006); *See also United States v. Darden*, 70 F. 3d 1507, 1517 (8th Cir. 1995); *See, e.g., U.S. v. Waalee*, 133 Fed. Appx. 819 (3d Cir. 2005); *United States v. Harris*, 332 F. Supp. 2d 692 (D.N.J. 2004).

Defendant Summers-El's assertion that she is not the person in the Indictment because her name is spelled in capital letters and/or does not have the "El" at the end of her name is without merit.  *See Wilcox v. Commissioner*, 848 F. 2d 1007, 1008 (9th Cir. 1988).

Lastly, to the extent that Defendant Summers-El relies on the Treaty of Friendship and Peace to support her argument that the IRS, or this Court has no jurisdiction over her, Defendant Summers-El has not claimed to be a citizen of Morocco and therefore cannot avail herself of the Treaty of Friendship and Peace between the United States and Morocco.  The Court asked Defendant at her first appearance before the district judge whether she was asserting her rights under a treaty with a foreign government and Defendant Summers-El responded that she was not.

### B.    Indictment

Defendant Summers-El argues that the Indictment should be dismissed because she was not apprised of the fact that a grand jury was investigating her, she was not afforded the opportunity to cross examine witnesses, and she did not have the opportunity to challenge the makeup of the jury pool.

In regard to Defendant Summers-El's assertion that she was not notified of the grand jury

investigation of her, she has no right to such notification since grand jury sessions are convened in secret. *See* Fed. R. Crim. P. 6(e)(2). To the extent that Defendant Summers-El relies upon Federal Rule of Criminal Procedure 6(b)(1), the Court notes that the last sentence of this Rule was deleted when the rules were amended in 2002. *See Committee Note of 2002 to Amendment to Rule 6*.

> The last sentence of currently Rule 6(b)(1) provides that "Challenges shall be made before the administration of the oath to the jurors and shall be tried by the court." That language has been deleted from the amended rule.

*Id.* Defendant Summers-El is simply incorrect in her assertion that she had the right to notification of the investigation before administration of the oath. She is likewise incorrect in her assertions that she was denied her right to interview and cross-examine adverse witnesses during the grand jury proceedings. The only persons allowed while the grand jury is in session are: attorneys for the government, the witness being questioned, and court reporters. *See* Fed. R. Crim. P. 6(d)(1).

Defendant has no right under the Fourth Amendment to have access to the affidavits of complaint, nor rights under the Sixth Amendment to interview witnesses against her or to have the assistance of counsel, at least in respect to grand jury proceedings. *See United States v. Moody*, 206 F. 3d 609, 614 (6th Cir. 2000)(The right to counsel attaches at the critical stages of criminal proceedings, which occur after initiation of formal charges); *See also United States v. Calandra*, 414 U.S. 338, 354 (1974)(The Supreme Court rejects argument that the Fourth Amendment's exclusionary rule applies to grand jury proceedings). The *Calandra* court stated that "[p]ermitting witnesses to invoke the exclusionary rule would delay and disrupt grand jury proceedings by requiring adversary hearings on peripheral matters, and would effectively

transform such proceedings into preliminary trials on the merits."(internal citations and quotations omitted); *See also Kentucky v. Stincer*, 482 U.S. 730, 737 (1987)(The right to cross-examination is "designed to promote the reliability in the truth-finding functions of a *criminal trial*.")(emphasis added); *See also United States v. Wortman*, 26 F.R.D. 183 (E.D. Ill. 1960)("An appearance before a grand jury is not a trial in a manner in which the term trial is used in this amendment."). As such, these rights that Defendant asserts have been violated, are not applicable to grand jury proceedings, but to Defendant Summers-El's upcoming criminal trial.[6]

Federal Rule of Criminal Procedure 6(e) "codifies the traditional rule of grand jury secrecy." *United States v. Sells Eng'g*, 463 U.S. 418, 425 (1983). Rule 6(2)(B) states that:

> Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:
>
> (i)     a grand juror;
> (ii)    an interpreter;
> (iii)   a court reporter;
> (iv)   an operator of a recording device;
> (v)    a person who transcribes recorded testimony;
> (vi)   an attorney for the government; or
> (vii)  a person to whom disclosure is made under Rule (e)(3)(A)(ii) or (iii);

Fed. R. Crim. P. 6(e). There are certain situations where grand jury material may be disclosed to a criminal defendant. *See* Fed. R. Crim. P. 16(a)(1)(B)(iii)(criminal defendants are entitled to transcripts of their own grand jury testimony); *See also* 18 U.S.C. § 3500(criminal defendants are entitled to the grand jury transcripts of the testimony of any government witnesses called at

---

[6] Defendant Summers-El has already waived her right to be represented by counsel at her criminal trial. Stand-by counsel is appointed to stand by should Defendant Summers-El reassert her constitutional right to be represented by court appointed counsel. Stand by counsel is not appointed to perform research attorney type duties for Defendant.

the defendant's trial); *See also* Fed. R. Crim. P. 6(e)(3)(E)(ii)(a court may authorize the disclosure of grand jury materials at the defendant's request, if the defendant demonstrates that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury).

Additionally, a presumption of regularity attaches to the grand jury's proceedings and persons attacking such proceedings have the burden of demonstrating that irregularity occurred. *United States v. Woods*, 544 F. 2d 242 (6th Cir. 1976). An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *United States v. Powell*, 823 F. 2d 996, 1000 (6th Cir. 1987)(citing *United States v. Calandra*, 414 U.S. 338, 344-45 (1974)). The rule against inquiry into the grand jury process, and the evidence presented to the grand jury, is to be strictly applied except if there are allegations of bias by the grand jury or that it was illegally constituted or a showing of long-standing prosecutorial misconduct. *Powell*, 823 F.2d 1000-01.

To the extent that Defendant Summers-El challenges the composition of the grand jury, it appears she is raising a Sixth Amendment and statutory right violation under the Jury Selection and Service Act. *See* 28 U.S.C. 1861 *et seq.* Defendant Summers-El asserts that the grand jury pool did not contain any of her peers because no Moors were included in the pool.[7]

---

[7] Qualifications for jury service can be found at 28 U.S.C. § 1865, which states in pertinent part that any person is deemed qualified to serve on grand juries, unless he or she:

(1) is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district.

28 U.S.C. § 1865(b)(1). The Court notes that it is unlikely a person claiming that he or she is not a United States citizen would be selected to serve, even if an actual citizen.

The Supreme Court has construed the Sixth Amendment's guarantee that criminal defendants be tried by an impartial jury to mean that juries be drawn from pools representative of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 537 (1975). This requirement is codified in the JSSA, which states that:

> It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.

18 U.S.C. § 1861. Additionally, the JSSA states that "no citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862.

The same standard applicable to Sixth Amendment challenges is also applicable to those brought pursuant to the JSSA. *See United States v. Ovalle*, 136 F. 3d 1092, 1099 (6th Cir. 1998). Defendant Summers-El may establish her claim by direct or indirect evidence. *Id.* In order to demonstrate her assertion via direct evidence, Defendant Summers-El must demonstrate that Moors were invariably excluded or under represented in the jury pool. *Id.* Defendant Summers-El has provided no such evidence, except for her unsupported allegation that no Moors were included in the jury pool.

As Defendant Summers-El has provided no direct evidence, she may establish a *prima facie* showing of an illegal jury selection process indirectly, by demonstrating: (1) a distinctive group is being excluded from the jury pool; (2) that the representation of this group in venire from which juries are selected is not fair and reasonable in comparison to the group's representation in the community at large; and (3) that this disparity is attributable to systematic exclusion of the group in the jury selection process. *See United States v. Brown*, 128 F. Supp.

2d 1034, 1039 (E.D. Mich. 2001)(internal quotations omitted)(citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579 (1979); *United States v. Buchanon*, 213 F. 3d 302, 309-10 (6th Cir. 2000)).

Assuming for purposes of this motion, that Moors are a distinctive group, Defendant Summers-El has not established her burden under the second and third factors to make out a *prima facie* case. Defendant Summers-El merely asserts that Moors were excluded, she does not present to this Court any evidence of the statistical representation of Moors within the Eastern District of Michigan and within the group in venire from which juries are selected. The Court cannot determine whether the jury pool was therefore unfair and unreasonable in light of the actual percentage of Moors within the community at large. Defendant Summers-El has also not shown that the disparity, if any, is attributable to systematic exclusion of the Moors. Defendant Summers-El has not established a *prima facie* case that the grand jury was selected improperly. Further, the Court notes that even if Defendant Summers-El established a violation of the JSSA, this would not necessarily guarantee dismissal of the Second Superseding Indictment against her. "The JSSA only provides a remedy for substantial failures to comply with its provisions." *Ovalle*, 136 F. 3d at 1100.

### C. Request for Default

Defendant Summers-El has twice requested this Court to enter an Order of Default[8] because the Government has failed to respond to her Notice of Abatement.[9] The entry of

---

[8] The second request was filed on April 11, 2007. Additionally, on April 12, 2007, Defendant Summers-El filed an Amended Second Request for Default.

[9] The Court notes that the Government has twice responded to Defendant Summers-El's Notice of Abatement.

10

judgments by default is governed by Federal Rule of Civil Procedure 55. As this is a criminal matter, the Federal Rules of Civil Procedure are inapplicable. Defendant's Requests for Entry of Default are denied.

### D. Trial Date

Both Defendants Summers-El and her Co-Defendant, Camelia Peatross, were scheduled to commence trial on April 15, 2007. At the close of oral argument on April 13, 2007, the Court conducted a pretrial conference. During this conference, Defendant Summers-El requested a one week adjournment. Defendant Summers-El stated that she had spent all of her free time preparing paperwork for the jurisdictional argument currently before this Court. She indicated that she had spent no time preparing for her defense, and that she was given, merely one week earlier, an extensive amount of material from the Government. The Government vehemently objected, one of the reasons being that two of its witnesses were presently en route to Detroit, Michigan.

After conferring with the parties, the trial date was adjourned until May 31, 2007, both Defendant Summers-El and Defendant Peatross agreed to waive their right to Speedy Trial. The Court finds that justice may be served and the interests of due process and judicial economy may be advanced by the adjournment. Additionally, the ends of justice serviced by this delay outweigh the interests of the public in a speedy trial.

## IV.  CONCLUSION

IT IS ORDERED that Defendant Summers-El's Notice of Abatement [**Docket No. 74, filed February 20, 2007**] is DENIED.

IT IS FURTHER ORDERED that Defendant Summers-El's Notice of Default [**Docket

11

**No. 78, filed on March 7, 2007**] is DENIED.

IT IS FURTHER ORDERED that Defendant Summers-El's Second Notice of Default [**Docket No. 93, filed April 11, 2007**] is DENIED.

IT IS FURTHER ORDERED that Defendant Summers-El's Motion to Dismiss [**Docket No. 94, filed on April 11, 2007**] is DENIED.

IT IS FURTHER ORDERED that Defendant Summers-El's Amended Second Notice of Default [**Docket No. 97, filed April 12, 2007**] is MOOT.

IT IS FURTHER ORDERED that the trial of this matter shall commence on May 31, 2007 at 9:00 a.m.

IT IS FURTHER ORDERED that no pretrial motions, other than a Motion by Defendant Peatross for production of grand jury transcripts, or a Motion for Reconsideration by Defendant Summers-El may be filed without first seeking leave of the Court.

                                            /s/ Denise Page Hood
                                            DENISE PAGE HOOD
Dated: April 19, 2007                  United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record and Ms. Tanisha L. Summers-El, 2508 Alter Road, Detroit, MI 48215 on April 19, 2007, by electronic and/or ordinary mail.

                                            S/William F. Lewis
                                            Case Manager